**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Bais Yaakov of Spring Valley,
on behalf of itself and all others
similarly situated,

              Plaintiff,

  v.

Varitronics, LLC,

              Defendant.

                                  **MEMORANDUM OPINION**
                                  **AND ORDER**
                                  Civil No. 14-5008 ADM/FLN

_____

Aytan Yehoshua Bellin, Esq., Bellin & Associates LLC, White Plains, NY, and Brant D. Penney, Esq., Reinhardt Wendorf & Blanchfield, St. Paul, MN, on behalf of Plaintiffs.

Jonathan M. Bye, Esq., Lindquist & Vennum LLP, Minneapolis, MN, on behalf of Defendant.
_____

## I.  INTRODUCTION

On March 18, 2015, the undersigned United States District Judge heard oral argument on Defendant Varitronics, LLC's ("Varitronics") Motion to Dismiss [Docket No. 22].  Plaintiff Bais Yaakov of Spring Valley ("Bais Yaakov") opposes the motion.  For the reasons set forth below, Varitronics' motion is denied.

## II.  BACKGROUND

In November 2013, Bais Yaakov, a religious corporation with its principal place of business in Monsey, New York, received the first unsolicited fax advertisement at issue here. Compl. ¶¶ 7, 10.  Over the next three months, Bais Yaakov received seven additional unsolicited facsimile transmissions (the "Fax Advertisements") that are the subject of this litigation.  Id. ¶ 10.  The Fax Advertisements promote the sale of visual learning tools such as poster makers, printers, and laminators.  Id. Ex. A.  Bais Yaakov alleges the Fax Advertisements violate the

Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA") and New York General Business Law § 396-aa.  Compl. ¶ 1.

  With one exception, the Fax Advertisements identify R&M Letter Graphics, Inc. ("R&M") as the company selling the products being advertised.  Seven of the eight Fax Advertisements feature an R&M logo emblazoned at the top with R&M's contact information— telephone number, email address, and web site—also prominently displayed.  One of the Fax Advertisements does not have R&M's logo or any other obvious R&M identifiers, but R&M is listed on the bottom in small print as the party to contact to be removed from future notifications, and the fax number to order products is the same fax number listed for R&M in the seven other Fax Advertisements.

  The products in the Fax Advertisements are sold under the name "VariQuest," a product line of Varitronics.  Id. ¶ 8.  Varitronics is a Minnesota corporation with its principal place of business in Plymouth, Minnesota.  Id.  Variquest products are only sold through dealers authorized by Varitronics.  Id.  R&M is the sole authorized dealer of Variquest products in a number of New York State counties and R&M is listed as an "Authorized VariQuest Dealer" on the www.variquest.com website.  Id. ¶¶ 21-25.

  The relationship of Varitronics and R&M that is relevant here is governed by one of two Dealership Agreements (collectively, the "Dealership Agreements").  Id. ¶ 22; Exs. A ("Second Agreement"), B ("First Agreement").  The First Agreement was executed on August 1, 2006, and remained in force until January 14, 2014.  Grey Decl. [Docket No. 25] ¶¶ 2-3.  Bais Yaakov received five of the eight Fax Advertisements while the First Agreement was in force.  Id. ¶ 3.  The Second Agreement was executed on January 14, 2014, and remains in force.  Id. ¶ 2.  Bais

Yaakov received three of the eight Fax Advertisements while the Second Agreement has been in force.

The Dealership Agreements set forth, among other things, R&M's obligation to "[e]xercise its best efforts to promote the sale of the Products within the territory."  First Agreement ¶ 8; Second Agreement ¶ 8.  The Dealership Agreements further permit R&M to "[u]se [Varitronics'] trade designations (including trademarks) only in the manner authorized by [Varitronics]" and obligate R&M to comply with Varitronics' "[i]nternet and trade show policies and not advertise or sell the Products outside of the Territory."  Id.

Varitronics' Advertising, Trade Show and Internet Policy (the "Advertising Policy") specifies R&M's obligations and restrictions for the promotion of Varitronics' products.  These obligations and restrictions govern R&M's promotion of "[p]roducts through its own website(s), trade shows, or through advertising."  Id. 6.  In relevant part, the Advertising Policy states: "[R&M] uses Varitronics trade names and registered trademarks only as prescribed by Varitronics" and "[R&M] promotes Products properly, accurately, and professionally as determined by Varitronics."  Id.  As defined in Appendix A to the Second Agreement, "Products" is defined as "All VariQuest® Visual Learning Tools, Software*, Supplies, and Content."[1]  Second Agreement 7.

Bais Yaakov filed suit individually and as the representative of similarly-situated persons in United States District Court for the Southern District of New York on April 30, 2014.  Named as defendants were Varitronics, R&M, and R&M's Chief Executive Officer.  See Bais Yaakov v.

---

[1] Although Appendix A to the First Agreement was not provided, Appendix A to the Second Agreement has an effective date of August 1, 2013, meaning it was effective when Bais Yaakov received all eight Fax Advertisements.

Varitronics, et al., No. 14-3083 (S.D.N.Y. April 30, 2014).  On October 22, 2014, Varitronics

was dismissed from the New York action pursuant to a stipulation.[2]  This action was filed on

December 18, 2014.  Bais Yaakov purports to represent three classes of individuals that

Varitronics sent or caused to be sent at least one solicited or unsolicited fax advertisement.

Compl. ¶¶ 37-38.

## III.  DISCUSSION

### A.  Motion To Dismiss Standard

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings "shall contain a short

and plain statement of the claim showing that the pleader is entitled to relief."  A pleading must

contain "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw a reasonable inference that the defendant is liable

for the misconduct alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  Determining

whether a complaint states a plausible claim for relief is "a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense."  Id.  "But where the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but not 'shown'—'that the pleader is entitled to relief.'"  Id. (quoting

Fed. R. Civ. P. 8(a)(2)).

---

[2] Varitronics' stipulated dismissal was based on personal jurisdiction concerns.  Mem. Supp. Dismiss [Docket No. 24] 5.  Bais Yaakov's claims against R&M and its Chief Executive Officer in the United States District Court for the Southern District of New York remain pending.

### B.  Pleading Deficiencies

#### 1.  Combined Allegations with R&M

Varitronics initially argues that the Complaint is deficient because it merges the actions taken by Varitronics and R&M together.  Varitronics argues that this pleading style insufficiently alleges who did what to whom, thus preventing Varitronics from receiving fair notice as to the grounds for the claims made against it.  "A complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant."  Tatone v. SunTrust Mortg., Inc., 857 F.Supp.2d 821, 831 (D. Minn. 2012). Concerns of merged allegations predominately arise when there is more than one defendant and those defendants "are left to guess" which claims are being asserted against them.  Id. at 832.

Here, it is clear that Bais Yaakov is asserting that Varitronics is liable for the Fax Advertisements under the TCPA and New York state law.  Bais Yaakov identified the eight calendar days it received the eight Fax Advertisements and the Fax Advertisements are attached as exhibits to the Complaint.  As the sole defendant in this action, Varitronics' notice of its alleged conduct is assured.  Varitronics is unable to genuinely claim that it does not have notice of Bais Yaakov's TCPA and state law claims.  Bais Yaakov's allegations that R&M, and not Varitronics, sent the Fax Advertisements goes to the merits of Bais Yaakov's claims and is not a procedural notice impediment to the Complaint.

#### 2.  Information and Belief

Varitronics next argues that the Complaint is deficient because it impermissibly pleads "on information and belief."  Generally, merely pleading "on information and belief, without

more, is insufficient to survive a motion to dismiss for failure to state a claim." <u>Kampschroer v.</u>

<u>Anoka Cnty.</u>, No. 13-2512, 2014 WL 5530590, at *14 (D. Minn. Nov. 3, 2014) (citing <u>Solis v.</u>

<u>City of Fresno</u>, No. 1:11-00053, 2012 WL 868681, at *8 (E.D. Cal. Mar. 13, 2012)).  Although

heavily reliant on the phrase "on information and belief," the allegations of Varitronics' liability

do not exclusively rest on averments based "on information and belief."  Bais Yaakov asserts

that  R&M's contractual obligations with Varitronics, specifically R&M's restriction on using

Varitronics' trade name, trade mark, and service mark without Varitronics' authorization,

sufficiently connects Varitronics to the offending Fax Advertisements.  <u>See</u> Compl. ¶¶ 22, 31.

These allegations are supported by the Dealership Agreements that both parties agree can be

considered as embraced by the pleadings.  <u>Gorog v. Best Buy Co., Inc.</u>, 760 F.3d 787, 791 (8th

Cir. 2014); <u>Porous Media Corp. v. Pall Corp.</u>, 186 F.3d 1077, 1079 (8th Cir. 1999).  As such, the

Dealership Agreements aid in determining the plausibility of Bais Yaakov's Complaint.  <u>See</u>

<u>Kushner v. Beverly Enters., Inc.</u>, 317 F.3d 820, 831 (8th Cir. 2003) ("When deciding a motion to

dismiss, a court may consider the complaint and documents whose contents are alleged in a

complaint and whose authenticity no party questions, but which are not physically attached to

the pleading." (quotation marks omitted)).  Because Bais Yaakov's allegations do not solely rest

"on information and belief," pleading in this fashion is not fatal to its claims.

## C.  The TCPA Claim

The TCPA makes it unlawful for any person to use a fax machine, computer, or other

device to send an unsolicited advertisement to a fax machine if the sender or recipient is in the

United States, subject to some exceptions that do not apply here.  47 U.S.C. § 227(b)(1)(C).  The

statute provides for a private right of action for injunctive relief and for damages equal to the

actual monetary loss or $500 for each violation.  47 U.S.C. § 227(b)(3).

Varitronics argues that Bais Yaakov's Complaint fails to plausibly allege TCPA liability because it does not allege that Varitronics sent the Fax Advertisements.  Bais Yaakov responds that the TCPA's definition of "sender" is not limited to the person or entity that actually pressed the send button.  Bais Yaakov argues that Varitronics is liable as a "sender" under the TCPA on either of two grounds; first, because the Fax Advertisements promote Varitronics' products or second, because the Fax Advertisements were sent on behalf of Varitronics.

### 1.  "Sender"

Bais Yaakov claims that Varitronics is a sender under the TCPA because the Fax Advertisements promote or advertise its goods or services.  Bais Yaakov relies on 47 C.F.R. § 64.1200(f)(10) (2013), which reads:

> The term sender for purposes of paragraph (a)(4) of this section means the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement.

Accord In re Rules & Regulations, 21 F.C.C. Rcr. 3787, 3822(f)(8) (2006); In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Junk Fax Prevention Act of 2005, 23 F.C.C. Rcd. 15059, 15069 n.20 (2008).  Bais Yaakov thus contends that a sender is, as defined above, either the person or entity "whose goods or services are advertised or promoted" or the person or entity "on whose behalf" the fax is sent.

Bais Yaakov's argument has not been prevailing in recent TCPA cases.  In Palm Beach Golf Center-Boca, Inc. v. Sarris the Eleventh Circuit held that "a person whose services are advertised in an unsolicited fax transmission, and on whose behalf the fax is transmitted, may be held liable directly under the TCPA's ban on the sending of junk faxes." No. 13-14013, 2015

7

WL 1004234, at *5 (11th Cir. Mar. 9, 2015) ("Palm Beach 2") (emphasis added).  In so holding, Palm Beach 2's use of the conjunction "and," as opposed to "or," clearly disclaimed liability on behalf of persons or entities due solely to the fact that their products were being advertised.[3]  In arriving at its holding, the Eleventh Circuit meticulously set forward the history and intention of the TCPA and its, and the FCC's, understanding of the term "sender."[4]  Despite describing the fax as an "unsolicited one-page fax advertisement, promoting dental services provided by Defendant", the Eleventh Circuit remanded, concluding that there was sufficient evidence to support having a jury decide whether the offending fax was sent on behalf of the defendant.  Id. at *1, *8.

Moreover, Bais Yaakov's position is further eroded by the practical concerns of inflicting liability simply because a person or entity's products were advertised in an unsolicited fax.

---

[3] On October 30, 2014, the Eleventh Circuit issued its opinion in Palm Beach Golf Center-Boca, Inc. v. Sarris, 771 F.3d 1274 (11th Cir. 2014) ("Palm Beach 1").  Palm Beach 1 was vacated and superseded on reconsideration by Palm Beach 2.  However, for purposes here, the relevant holding of Palm Beach 1 is identical to the holding of Palm Beach 2, which is excerpted above.  Compare Palm Beach 1, 771 F.3d at 1284, with Palm Beach 2, 2015 WL 1004234, at *5.  Before Palm Beach 2 was issued, on November 14, 2014, the Plaintiff-Appellant moved to clarify the holding in Palm Beach 1, arguing that the word "and" as used in the holding may cause confusion because it is very similar to the FCC's regulation codified at 47 C.F.R. § 64.1200(f)(10) (2014).  Plaintiff-Appellant's Motion to Clarify at 1-2 Palm Beach 1, 771 F.3d 1274 (No. 13-14013).  The Eleventh Circuit denied the Plaintiff-Appellant's Motion in a summary order, further undermining Bais Yaakov's position.  Order Palm Beach 1, 771 F.3d 1274 (No. 13-14013).

[4] Prior to its resolution, the Eleventh Circuit solicited the FCC's input, receiving an amicus letter brief explaining the agency's position.  In its briefing and at the hearing, counsel for Plaintiff argued that the FCC's amicus letter in Palm Beach 2 is a matter of public record and the Court can therefore take judicial notice of its contents.  Because the Eleventh Circuit's holding accounts for the contents of the FCC's amicus letter, the Court elects to rely exclusively on the Eleventh Circuit's opinion and declines to directly address the contents of the amicus letter itself.  Therefore, it is unnecessary to conclude whether or not the Court may take judicial notice of the amicus letter.

These concerns are throughly discussed in <u>Cin-Q Auto., Inc. v. Buccaneers Ltd. P'ship</u>, No. 8:13-1592, 2014 WL 7224943, at *6-7 (M.D. Fla. Dec. 17, 2014).  Concluding that a person or an entity is *per se* a "sender" under the TCPA merely because, as Bais Yaakov argues, an offending fax promotes their "goods or services" would subject parties to TCPA liability that had no involvement whatsoever in transmitting a fax advertisement.  While it does seem impractical and thus unlikely that a person or entity would directly transmit a fax advertisement promoting the goods or services of a completely uninvolved third-party, Bais Yaakov's proposed interpretation of "sender" could, as forecast in <u>Cin-Q Auto</u>, give rise to "sabotage liability."  <u>Id.</u> at *6.  As illustrated in <u>Cin-Q Auto</u>, if Bais Yaakov's argument is accepted, "a random individual in Boston, mind brewing with *scienter*, [could] implicate the New York Yankees by advertising their season tickets."  <u>Id.</u>  This broad scope of liability was certainly not contemplated by Congress when the TCPA was passed.[5]

Varitronics is not subject to TCPA liability simply because the Fax Advertisements promote VariQuest products.[6]  Varitronics is, however, liable for the Fax Advertisements if they

---

[5] At least two district courts have held that a person or entity can be liable under the TCPA simply because their products were advertised in an unsolicited fax advertisement.  <u>See Sturdy v. Medtrak Educ. Servs. LLC, No. 13-3350, 2014 WL 2727200, at *2 (C.D. Ill. June 16, 2014); Addison Automatics, Inc. v. RTC Grp., Inc.</u>, No. 12-9869, 2013 WL 3771423, at *4 (N.D. Ill. July 16, 2013).  These decisions, however, predate <u>Palm Beach 1</u> and do not articulate reasoning that convinces the Court that their holding is the better result.

[6] Varitronics additionally argues that Bais Yaakov's claims are deficient because the products depicted in the Fax Advertisements are R&M's, not Varitronics'.  Varitronics contends that since R&M must first purchase and take title to the VariQuest products before offering them for sale, the products are R&M's.  Def.'s Reply Mem. Opp'n Mot. Dismiss [Docket No. 31] 9.  At the pleading stage, this argument fails because the Complaint repeatedly refers to the "products" as being Varitronics'.  Additionally, the Complaint avers that R&M was only permitted to sell the products in accordance with Varitronics' restrictions and prohibitions, such as selling at prices established by Varitronics and not selling to resellers or outside of its expressly defined territory.

were sent on its behalf.

### 2.  "On Whose Behalf"

Bais Yaakov also contends that it plausibly alleged that R&M sent the Fax Advertisements on behalf of Varitronics.  Bais Yaakov argues that the Dealership Agreements expressly require R&M to advertise Varitronics' products and that Varitronics must authorize R&M's usage of Varitronics' trade name or trademarks in its advertising.  Thus, since the Fax Advertisements used Varitronics' trade name or trademark, pursuant to the Dealership Agreements, Varitronics' prior authorization was required before the Fax Advertisements were transmitted.  In opposition, Varitronics argues that Bais Yaakov failed to plausibly plead that the Fax Advertisements were sent on its behalf because the Complaint fails to allege any basis of vicarious liability stemming from the conduct of R&M.

As an initial matter, a plaintiff is not required to establish vicarious liability to recover under the TCPA when a third party sends the unsolicited fax advertisements.  See Palm Beach 2, 2015 WL 1004234, at *1 n.4 (noting that "a plaintiff may prevail under a theory of direct liability against the entity 'on whose behalf' an unsolicited fax advertisement is sent").

As to the merits, Bais Yaakov has plausibly alleged a theory of direct liability by alleging that the Fax Advertisements were sent on Varitronics' behalf.  First, Bais Yaakov alleges that the VariQuest products depicted in the Fax Advertisements are Varitronics', and that they are sold only through authorized dealers.  Compl. ¶ 8.  Bais Yaakov alleges that R&M "was a sole authorized dealer of [Varitronics'] products" and that "Defendant authorized R&M to use the Varitronics/VariQuest trade name, trade mark and service mark as part of R&M's marketing and advertising of Defendant's products on behalf of Defendant."  Id. ¶¶ 21, 31.  Next, Bais Yaakov alleges that Varitronics and R&M have a "detailed contract laying out their respective rights and

obligations in selling Defendant's products.  Id. ¶ 22.  The Dealership Agreements memorialize

these "rights and obligations."  Turning to the Dealership Agreements, they state that R&M shall

"[u]se [Varitronics'] trade designations (including trademarks) only in the matter authorized by

[Varitronics]."  First Agreement ¶ 8; Second Agreement ¶ 8.  Moreover, the Advertising Policy

states that  "[R&M shall] use[] Varitronics trade names and registered trademarks only as

prescribed by Varitronics."  First Agreement 6; Second Agreement 6.  Given these allegations, it

is at least plausible that R&M sent the Fax Advertisements on behalf of Varitronics.  Discovery

may determine if Varitronics authorized, sent, or otherwise approved the Fax Advertisements,

but, at this juncture, Bais Yaakov is only required to plausibly plead that the Fax Advertisements

were sent on Varitronics' behalf.  The averments in the Complaint, contextualized and colored

by the Dealership Agreements, satisfy this burden.

**D.  New York State Law Claim**

Bais Yaakov also contends that the Fax Advertisements violate New York Business Law

§ 396-aa.  Worded similarly to the TCPA, § 396-aa states it "shall be unlawful for a person,

corporation, partnership or association to initiate the unsolicited transmission of telefacsimile

messages promoting goods or services for purchase by the recipient of such messages."  N.Y.

Gen. Bus. Law § 396-aa(1).  Having concluded that Bais Yaakov has plausibly alleged that

Varitronics has at least authorized R&M to transmit the Fax Advertisements on its behalf, it

logically follows that Bais Yaakov has plausibly alleged that Varitronics "initiated" the

transmission of the Fax Advertisements.  See New Oxford American Dictionary 868 (2d ed.

2005) (defining "initiate" as "cause (a process or action) to begin").  Thus, Bais Yaakov's state

law claim remains.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that Varitronics, LLC's Motion to Dismiss [Docket No. 22] is **DENIED.**

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  April 3, 2015.